## Baier v. Universal Welding, Inc.

*Ned J. Nakles* and *Eric K. Koskoff*, for plaintiff.

*Cosmos J. Reale*, for defendant.

*Costello & Snyder*, for additional defendant.

KEIM, J., April 26, 1971.—This case comes before the court en banc for consideration of plaintiff's

motion to remove a compulsory nonsuit entered against him at the conclusion of his case.

The case arises from an accident occurring on March 30, 1966, when plaintiff suffered serious injuries when he fell on a trailer at defendant's place of business.

The framework of reference which we are bound to use in considering plaintiff's motion to remove the compulsory nonsuit was set forth in the case of Perciavelle v. Smith, 434 Pa. 86 (1969), at page 88, wherein the court stated:

"The rule governing the grant of compulsory nonsuits is clear. In Engle v. Spino, 425 Pa. 254, 256, 228 A.2d 745 (1967), we said, '[A] judgment of nonsuit can be entered only in clear cases and plaintiff must be given the benefit of all evidence favorable to him, together with all reasonable inferences of fact arising therefrom, and any conflict in the evidence must be resolved in his favor: [Citing authority].'"

We may, therefore, summarize the testimony giving plaintiff the benefit of all evidence favorable to him and of all reasonable inferences of fact arising from the evidence.

On the day of the accident, plaintiff was using his own tractor hauling a trailer furnished by C. & F. Equipment Company and was operating under a lease to B. & P. Motor Express. Prior to leaving Pittsburgh, the trailer was inspected and was found to be clean, free of defect or of grease and oil on the trailer bed. Plaintiff drove to defendant's plant at Export where he was to load his unit. Upon arrival, he was directed by one of defendant's employes to park his unit. During the preparation for loading, plaintiff observed no grease or oil on the trailer bed. Heavy equipment was placed on plaintiff's trailer by defendant's employe with the use of an overhead crane. It

was first loaded with a large metal piece shaped like a rolling pin. Defendant's employe, during the loading of this material, walked upon a pile of material, located beside plaintiff's tractor trailer and stepped over on to the trailer. This pile of material was dirty and greasy.

Defendant's employe then loaded two wheels on the front of the trailer, using the crane and by walking on to the trailer over the pile of dirty, greasy material. After two more wheels were loaded in this manner, defendant's employe then directed plaintiff to bind down his load.

The normal and proper procedure in binding a load is to throw chains across the trailer and place a binder on the driver's side. To tighten the binder, a long pipe is placed over the handle of the binder to give leverage. The pipe is then pulled down while standing on ground level. The procedure was best done from the ground, but because the space between the trailer and the material piled beside it was only 18 inches, and because of the height of the stored material, plaintiff could not tighten the binder from the floor. As plaintiff got up on the trailer to tighten the binders and walked toward them, he was looking ahead of him and was not able to see the floor of the trailer clearly because of a shadow cast on the trailer by the load, the shored material and the crane overhead.

Suddenly, his right foot slid to the right and he was thrown off the trailer to the floor of the building. He fell in the space between the trailer bed and the pile of material beside the trailer striking his leg on a protruding wooden support at the bottom of the pile of material. His ankle and leg were severely fractured and he also sustained a back injury. Immediately after his fall, he pulled himself up to see what caused

his fall and saw an area of greasy substance with a heel mark in it where he had just been.

A motion for compulsory nonsuit was denied at the conclusion of plaintiff's liability testimony, but was granted at the conclusion of plaintiff's total case in chief. It is this action of the trial court that is now before the court en banc for consideration.

It is the opinion of the court that plaintiff was a business visitor to defendant's premises. He was upon the premises in connection with his own business, that of trucking, and was conducting that business at the truck loading and unloading area of defendant's premises. See Restatement, Torts 2d, §332, comment a. The scope of the duty owed to a business visitor or invitee is set forth in Restatement of Torts 2d, §343, comment d, wherein it states as follows:

"An invitee is entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises, and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein."

Considering the evidence in the light most favorable to plaintiff and drawing all inferences in his favor, a jury could well have found that the working space of 18 inches was insufficient to allow plaintiff to properly perform his work of securing the load on the truck. Defendant knew, or should have known, of the risk in providing an inadequate working area. Defendant's duty of care is also established by the General Safety Law which requires:

"Section 2. General Safety and Health Requirements. — (a) All establishments shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate pro-

tection for the life, limb, health, safety, and morals of all persons employed therein . . .

"Section 5. Floor Space — The floor space of workrooms in any establishment shall not be so crowded with machinery as to thereby cause risk to the life or limb of any employe. Proper clear aisle space shall be maintained where necessary for employes to walk between machines, equipment, or material": Act of May 18, 1937, P.L. 654, 43 PS §§25-2, 25-5.

The purpose of this act is:

". . . to provide for the safety and to protect the health and morals of persons while employed; prescribing certain regulations and restrictions concerning places where persons are employed, and the equipment, apparatus, materials, devices and machinery used therein. . . ."

This act has been held to apply to business visitors entering premises for the purpose of conducting business or work thereupon. See Barron v. Hydrotated Anthracite Fuel Company, 159 Pa. Superior Ct. 35 (1946).

The evidence above recited supports plaintiff's contentions that he was not supplied with an adequate and safe working area because of (a) the insufficient work space and (b) the inadequacy of the lighting in the area rendering him unlikely to see a possible danger such as a grease spot.

It was also plaintiff's contention that defendant was liable because of the grease spot upon the trailer bed. Plaintiff's testimony showed that the trailer had been inspected before it left Pittsburgh and it was clean and there was no grease or oil on the trailer at the time. The trailer was still free of grease or oil after it was taken from plaintiff's plant. When plaintiff left to have a meal and returned sometime

later, he watched while his trailer was loaded. There was an overhead crane in use and defendant's employe made three separate trips to plaintiff's trailer during a loading process, stepping upon piles of greasy material when he was getting on and off the trailer. While the evidence is circumstantial that it was an employe of defendant who is responsible for the grease spot on the trailer bed which caused plaintiff's fall, there was sufficient evidence for the jury to have placed responsibility for that grease spot upon defendant and his employe. Defendant could well have argued, if he had put in a defense, that it was an activity of plaintiff that caused the grease spot to appear on the trailer floor. At that point, it would have been the responsibility of the jury to pass upon this factual dispute. The law in Pennsylvania is clear that not every possible conclusion must be ruled out before a factual issue based upon circumstantial evidence can be submitted to a jury. The Pennsylvania Supreme Court stated, in the case of Smith v. Bell Telephone Company, 397 Pa. 134, page 138 (1959), as follows:

"It is not necessary under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible. Also, it is beyond the power of the court to say whether two or more reasonable inferences are 'equal.'"

The factors are for the jury in any case, whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on defendant.

Since the evidence justified the inference that the grease spot was put there due to the active negli-

gence of defendant's employe, it was not necessary for plaintiff to prove the length of time that the grease spot had existed upon the floor of the trailer as was stated in the case of Schwartz v. Warwick-Philadelphia Corporation, 424 Pa. 185 (1967). In this case, the court stated, at pages 190 and 191, as follows:

"Moreover, if it is established that the alleged tortious act was the result of the defendant's active negligence, constructive notice need not be proved. . . . In Clark v. Glosser Bros. Dept. Stores, Inc., 156 Pa. Superior Ct. 193, the plaintiff was injured by tripping over some tape which had fallen to the floor in a department store. The tape had been used for holding bundles together on the tables. The defendant admitted it was possible for the tapes to fall or be thrown to the floor but denied liability by asserting that there was no constructive notice of the alleged dangerous condition on the floor. In sustaining judgment for the plaintiff, the Superior Court said there was no necessity to prove constructive notice: 'Plaintiff's proof, which must be accepted on this appeal, shows that the injuries sustained by her were due to the direct negligence of the defendant's employes in throwing the tapes in the aisles or not taking reasonable precaution to prevent their falling to the floor, so that the question of constructive notice was not of vital importance. The defendant's employes had actual notice of their own alleged negligent acts, which were within the apparent scope of their authority and in the furtherance of the master's business. The defendant is accordingly chargeable with their dereliction. Kelly et ux. v. Yount, 135 Pa. Superior Ct. 528.' "

It is the further opinion of this court that plaintiff could not be held contributorily negligent as a matter of law because of his failure to observe the grease spot that caused him to fall. Testimony concerning the supposed inadequate light and inadequate work

space which plaintiff was required to use in the loading and securing of his trailer raised substantial jury questions as to whether or not these factors excused plaintiff from his failure to observe the grease spot. As was stated in Gillingham v. Patz, 429 Pa. 308 (1968), at page 312:

"We have said again and again that contributory negligence should not be declared as a matter of law except in a very clear case and only where the evidence thereof is so clear and palpable that there is no room for fair and reasonable men to differ in their conclusions as to its existence."

The evidence of supposed contributory negligence is not clear in this case and reasonable minds could differ thereon, making this a question for the jury to decide.

We, therefore, enter the following order:

## ORDER

And now, April 26, 1971, after due and careful consideration, a compulsory nonsuit as entered in the above case is removed and the prothonotary is directed to place this case upon the next available trial list.